## HEYWOOD *v.* BENTON & RAY.

An indorser of the writ of a non-resident is not released by the plaintiff becoming a resident of the State.

A return upon a writ of execution of *non est inventus*, or not satisfied, procured by a defendant in bad faith and with a fraudulent purpose of charging the indorser, is not such a return as the law contemplates in order to fix the indorser.

It was held, also, that so long as good faith is observed the defendant is not bound to active diligence in collecting his costs of the original plaintiff.

Nor is he bound to take out execution against his body, or necessarily required to deliver it to the officer, in season to make sale of an equity of redemption in real estate.

THIS is an action of *scire facias*, by Henry Heywood against Jacob Benton and Ossian Ray, as indorsers of a writ in favor of Mary C. D. Hutchins against Henry Heywood, administrator of Samuel Wesson, dated June 25, 1866, which action was entered in this court at the November term, 1866, and was tried by jury at the April term, 1869, when there was a verdict for the defendant in that action, and a judgment thereon for the defendant to recover his costs taxed at $128.10, upon which judgment execution was issued May 29, 1869, returnable to the then next term of this court. Said execution was placed in the hands of W. W. Lindsey, a deputy sheriff of this county, for service on the fifteenth day of October, 1869, and was returned not satisfied on the second day of November, 1869, being the return day thereof. Said April term, 1869, of this court ended on the tenth day of May, 1869 ; and this action was commenced against the defendants as indorsers of said writ, January 25, 1870, returnable to the April term of this court, 1870. When said suit of *Hutchins* v. *Heywood* was commenced, the plaintiff resided with her husband, Ezra Hutchins, at Newton, Massachusetts, and the writ was indorsed with the names of the defendants in this action. That said Mary C. D. Hutchins came to reside at said Lancaster on the twenty-ninth day of October, 1868, and has resided there ever since, separate from her said husband, Ezra Hutchins, who has continued to reside at said Newton, Massachusetts,—she having the separate and exclusive control of her own property. There never was any order of this court releasing these defendants as indorsers of said writ, or allowing the plaintiff thereon to become the indorser of her own writ ; but the defendants' names have always remained as indorsers thereon. The defendants claim that they were released from any liability, as indorsers upon said writ, by the plaintiff becoming a resident of this State, as above stated ; and the plaintiff claims that they are liable for

the full amount of said costs. °The defendant, Benton, claims that his name was indorsed upon said writ without his authority.

*Burns & Heywood*, for the plaintiff.

*J. H. Benton, Jr.*, for the defendants.

BELLOWS, C. J.   The first question is, whether the indorsers were released from liability by the original plaintiff becoming a resident of the State during the pendency of the suit, and ever since residing here.

If the original plaintiff had resided in the State when her suit was brought, she might perhaps have indorsed the writ, although she was a married woman ; but if, instead of that, it had been indorsed by her attorney or agent, he would unquestionably have been liable. *Parsons* v. *Pearson*, 1 N. H, 336 ; *Chadbourne* v. *Hodgdon*, 1 N. H. 359 ; *Eaton* v. *Sloan*, 2 N. H. 552.

In the last case the court say,—" When a plaintiff is an inhabitant of this State, the indorser of his writ undertakes to pay the cost for which the defendant may have judgment, in case the plaintiff neglects, avoids, or is unable to pay the costs, and such neglect, avoidance, or inability appears by the officer's return upon an execution issued against the plaintiff." These decisions are under the law of 1791.

Under the Revised Statutes, the same doctrine was held in *Woodward* v. *Peabody*, 39 N. H. 189.

This being the case, it would seem to follow, as matter of course, that one who had indorsed the writ of a non-resident would not be released by the plaintiff coming to reside in this State. So it has been distinctly settled in Massachusetts, under a statute much like our own in this respect. *Prop. Locks & Canals* v. *Reed*, 8 Met. 146.

We are of the opinion, then, that by the plaintiff becoming a resident of this State the indorsers were not discharged.

The defendants also urge that they stand merely in the light of sureties for the original plaintiff, and that the original defendant was bound to use reasonable diligence to collect the costs of the plaintiff ; and they contend that as matter of law he has not done so, inasmuch as he took out execution only against the goods and estate of the plaintiff, and not against her body, and also delivered it to the officer too late to enable him to levy upon an equity of redemption of real estate.

These objections were not specifically made in the case agreed, but as they appear in the record we have considered them.   The question whether, to charge the indorser, the party ought to use reasonable diligence to collect the cost of the original plaintiff, is an important one, and is not directly settled by any adjudged case in this State.

Sec. 18, ch. 183 of the Revised Statutes, provides that " the person indorsing any writ shall be liable, in case the plaintiff live out of the State, upon return of *non est inventus*, or that such execution as may have issued against the plaintiff is unsatisfied, to pay to the defendant all such costs as he may recover against the plaintiff." Sec. 9, ch. 203

of the General Statutes, is substantially the same, only it is more explicit in providing that if the plaintiff live out of the State no such return is necessary. That construction, however, had already been given to the Revised Statutes, in *Woodward* v. *Peabody*, 39 N. H. 189, before cited. By the strict terms of the Revised Statutes, the return of *non est inventus*, or that the execution was not satisfied, was sufficient to fix the indorser, and where the plaintiff resided in this State such return was absolutely essential. It was so held, under the law of 1791, in *Parsons* v. *Pearson*, 1 N. H. 336, and in *Chadbourne* v. *Hodgdon*, 1 N. H. 359.

The law of February 9, 1791, N. H. Laws, ed. 1815, p. 100, sec. 7, provided that the indorser should be liable, in case of the plaintiff living out of the State, or upon the neglect, inability, or avoidance of the plaintiff, and return of *non est inventus*, or that such execution as may have issued against the plaintiff is unsatisfied," to pay the costs and prison charges.

This law was in substance reënacted January 2, 1829, N. H. Laws, ed. 1830, p. 91, sec. 10. If, then, the return of *non est inventus*, or not satisfied, was necessary under the old law to fix the indorser, it clearly must be under the Revised and General Statutes; and such return being so made necessary, it must, upon general principles applicable to officer's returns, be regarded as conclusive of the facts required to be returned—*Brown* v. *Davis*, 9 N. H. 81; where it is laid down as the general principle, deducible from the authorities, that between the parties to a suit and those claiming under them as privies, and all others whose rights and liabilities are dependent upon the suit as bail and indorsers, the return of the sheriff of matters material to be returned is so far conclusive evidence that it cannot be contradicted for the purpose of invalidating the sheriff's proceedings, or defeating any right acquired under them.

It is said also in that case, by PARKER, J., that "Perhaps fraud in the officer or the party may also form an exception to the rule;" and, upon a careful consideration of the subject, we are of the opinion that a return procured by the party in bad faith, and with a fraudulent purpose to charge the indorser, would not be such a return as the statute contemplates, and would not be sufficient to fix the indorser: as, if the execution was delivered to an officer in a county other than the one in which the plaintiff resided, knowing that the officer would find nothing to satisfy it, and at the same time knowing that there was sufficient property to satisfy it at the place of his residence. If this was done in bad faith and for the purpose of fixing the indorser, there could be no pretence that it could be available to effect that object. So it would be if he should fraudulently keep the execution in his own possession until so near the return day that the officer had no time to search for property or the body. In such cases the return would be vitiated by the fraud, like everything else, however solemn it may be,—even though matter of record, as such return may be considered to be. *Great Falls Manufacturing Co.* v.

*Worster*, 45 N. H. 110, and cases cited.  *Parkhurst* v. *Sumner*, 23 Vt. 538.   See *Howard* v. *Daniels*, 2 N. H. 137.   This doctrine was applied in *Stevens* v. *Bigelow*, 12 Mass. 434, where it was held that to charge the bail the execution should be delivered to the officer at some reasonable time, that the principal may be arrested, and that if he fraudulently retain the execution until so near the expiration of the time that the officer would have no opportunity to find the body, and then there should be a return of *non est inventus*, such fraud would furnish a good bar to the *scire facias;* and the court say,—" It is sufficient that the execution be in the sheriff's hands so long before the expiration of the year, as that he may have, by diligent inquiry, a reasonable time and opportunity to find the principal.

This doctrine, that such return is vitiated by fraud, is recognized in *Winchel* v. *Stiles*, 15 Mass. 280.

We are of the opinion, then, that a return of *non est inventus*, or not satisfied, fraudulently procured, will not avail the party to fix the indorser ; but it is another and very different question, whether, in the absence of fraud, the defendant in the *sciri facias* may show in his defence that the plaintiff had not used reasonable diligence to collect the costs of the original plaintiff.

By the Revised Statutes the indorser is made liable upon a return of *non est inventus*, or that the execution is unsatisfied.

By the laws of 1791 and 1829, he was made liable upon the neglect, inability, or avoidance of the plaintiff, and return of *non est inventus*, or that the execution is unsatisfied ; and in *Woodward* v. *Peabody*, 39 N. H. 189, it was held that the provisions of the Revised Statutes on this subject were but a revision and reënactment of the existing statute, without any great and substantial change such as was contended for by the plaintiff, and which would make a return necessary when the plaintiff lived out of the State.

In Massachusetts, under their statute of 1784, it has been decided that a defendant who recovers costs is bound to use reasonable diligence to collect them of the plaintiff before he can charge the indorser. *Ruggles* v. *Ives*, 6 Mass. 494.   The Massachusetts statute of 1784 is much like our law of 1791, and makes the indorser liable in case of the avoidance or inability of the plaintiff.

A similar doctrine in relation to bail is held in Massachusetts, as we have seen, namely, that the plaintiff must honestly endeavor to obtain satisfaction of the principal before he can have recourse to the bail— *Stevens* v. *Bigelow*, 12 Mass. 436 ; and it is there said that the law requires the plaintiff to use reasonable diligence to cause the body of the principal to be arrested.   The same doctrine is recognized in *Winchel* v. *Stiles*, 15 Mass. 230, at least so far as requiring good faith in the plaintiff in procuring a return of the execution is concerned,—the court holding that the proper foundation for the proceeding against bail is the return of *non est inventus*, and that it would be injurious to creditors, and the cause of much confusion, if that return were to be considered as open to question by the bail, unless in case of fraud.

Upon a statute in Maine in relation to indorsers, similar to that in Massachusetts of 1784, it is held that the defendant must show that he has used reasonable diligence to collect the costs of the plaintiff in order to charge the indorser.    *Wilson* v. *Chase*, 20 Maine 385.    In that case the court say that their statute is almost a literal transcript of the Massachusetts provision on this subject.

The same doctrine is held in *Thomas* v. *Washburn*, 24 Maine 225, where it was decided that proof that the original plaintiff had property in a county other than that which constituted the precinct of the officer making the return, was admissible.    In *Harkness* v. *Farley*, 2 Fairf. 491, where the constable of the town of Camden, where the plaintiff resided, returned no property within his precinct, it was held that the return was conclusive that there was no property in Camden, and *prima facie* evidence of inability to pay the costs, but that parol evidence might be received that the plaintiff had property elsewhere within reach of the process of their courts.    So in *Palister* v. *Little*, 6 Greenl. 350, it was decided that a return of no property within the officer's precinct is not conclusive evidence of inability; and that therefore, to a plea that plaintiffs were of sufficient ability and possessed real estate sufficient to satisfy the judgment for costs, a replication setting out an execution issued on such judgment, and a return of no property, was held to be bad.

The tendency of these authorities is, that, under statutes similar to our laws of 1791 and 1829, the original defendant must use reasonable diligence to collect his costs of the plaintiff in order to fix the indorser; but what shall be deemed reasonable diligence is not defined.

By the Revised Statutes the indorser is declared liable, upon the return of *non est inventus*, or that the execution is unsatisfied.    If this is but a revision and reënactment of the old law, with no substantial change of existing provisions,—and such seems to have been the view of the court in *Woodward* v. *Peabody*, before cited,—then these decisions in Massachusetts and Maine would be entitled to great consideration.

It will be observed, however, that the question considered in *Woodward* v. *Peabody* was, whether the Revised Statutes had so changed the old law as to make a return necessary where the original plaintiff was not a resident of the State, it having been well settled under the old law that such return was not necessary; and the court say that no such change was intended as would result from the construction urged by the plaintiff, namely, that under the new law a return of an execution *was* necessary in case the plaintiff was a non-resident.

There was no discussion of the question of reasonable diligence at all. In fact, no construction requiring it had been adopted in this State, or countenanced by any judicial decision, but whatever there was tended in the opposite direction.

In *Blaisdell* v. *Sheafe*, 5 N. H. 201, it is held that if the execution for costs be delivered to the officer after the court had adjourned on the return day, a return upon it of *non est inventus* would avail nothing; but the court say that if delivered to him at any time before the court

adjourns to a future day, such return would charge the indorser. Nothing, indeed, is said on the subject of due diligence, but these remarks could hardly have been made had the court understood that due diligence was necessary to charge the indorser.

The same suggestions may be made in respect to *Woodward* v. *Peabody*, where a construction is given to the Revised Statutes, and the three cases where the indorser would be liable stated ; and no suggestion that reasonable diligence was an essential prerequisite. In none of the adjudged cases in this State on this subject do we find any such suggestion.

The position of things at the time of the passage of the Revised Statutes then appears to have been this : that although the old law of 1791 was capable of a construction like the Massachusetts and Maine acts, that would require reasonable diligence to charge an indorser, it might also without violence to the language have been construed the other way ; and no judicial decision had countenanced a construction like that given in Massachusetts and Maine. It is to be observed, too, that this law of 1791 expressly required a return of *non est inventus*, or not satisfied, and it was held that such return was the only proof of inability or avoidance, as we have already seen.

Besides, it is to be borne in mind that, by our laws of 1791 and 1829, the indorser was in terms made liable in case of the neglect as well as the inability or avoidance of the plaintiff, and in this respect it differs from the Massachusetts act of 1784 ; and this certainly gives some countenance to the idea that the indorser was placed in the light of a surety to the plaintiff, and that the defendant was under no obligation of active diligence beyond procuring in good faith a return of *non est inventus*, or that the execution is unsatisfied.

Under these circumstances the Revised Statutes make the indorser liable expressly on the return of *non est inventus*, or that the execution is unsatisfied, and there certainly is nothing in these terms from which the obligation to use active diligence to collect the costs of the plaintiff can be implied'; but we think the terms of the act are fully satisfied by procuring in good faith the returns required. Had the previous statutes received a different construction in our courts, a very different question would have arisen.

As it is, however, we think that if the original defendant, in good faith and in the absence of fraud, procures the required returns to be made, the indorser is liable.

What would be evidence of bad faith or fraud may not be easy to define. It may safely be said, however, that if the original defendant places the execution in the hands of an officer in a county where the plaintiff does not reside, and in which he is known to have no property, and at the same time the defendant knows that in another county there is sufficient to satisfy the execution, and this be done with the fraudulent purpose of charging the indorser, a return of not satisfied would not avail the defendant. So, if for a like purpose he place the execution in the hands of the proper officer, but at such time and under such

circumstances that no proper search can be made, or, he designedly conceals from the officer the knowledge of the existence of such property sufficient to satisfy the execution,—these and the like circumstances would be evidence of bad faith, and ought to render the return inoperative.

It is urged that the return of not satisfied in this case is of no avail, because the execution was made to run only against the property of the plaintiff.

The statute in terms is, that the indorser shall be liable, if the plaintiff shall live out of the State, upon the return of *non est inventus*, or that the execution is unsatisfied; and it is held in *Woodward* v. *Peabody* that the indorser is liable in case the plaintiff lives out of the State without any return of an execution; that the residence out of the State is a separate and distinct ground for charging the indorser, as if the conjunction " or " followed the word State. And it is there laid down that the indorser is liable in three cases : 1, when the plaintiff is not an inhabitant of the State; 2, when the execution is duly returned *non est inventus;* and 3, when it is returned unsatisfied.

In Maine and Massachusetts it is held that to charge the indorser it is not necessary that both inability and avoidance should concur. *Harkness* v. *Farley*, 2 Fairfield 491, 493. So is *Wilson* v. *Chase*, 20 Maine 388, where it is said if redress is sought properly for either incident, and duly proved, the plaintiff, in the *scire facias*, will be entitled to judgment. In *Prop. Locks & Canals* v. *Reed*, 8 Met. 149, the court say that " either avoidance or inability of the plaintiff is sufficient to charge the indorser." So is *Merrill* v. *Walker*, 24 Maine 237, and *Oliver* v. *Blake, ibid* 353. These decisions accord with the doctrine of *Woodward* v. *Peabody* and with the language of our statute, and upon that ground the original defendant was justified in taking out execution against the plaintiff's property alone.

The defendants also contend that, as the execution was not delivered to the officer in time to levy upon and sell an equity of redemption in real estate, the return of not satisfied was not duly procured. We think, however, as the case now stands, the return must be regarded as true, and as proof of the want of property.

Had there been within the knowledge of the officer such an equity of redemption out of which the execution could have been satisfied, it is not easy to see how he could have made such a return ; and in the absence of any proof of bad faith or fraud, we must regard the return as proof of no property to satisfy the execution.

It has been urged for the defendants, as a reason for holding this plaintiff to the obligation of using reasonable diligence to collect the costs of the original plaintiff, that in case they were paid by the defendants they would not have the same remedy against the original plaintiff as this plaintiff has, and could not arrest the body.

Upon the doctrine of *Brewer* v. *Franklin Mills*, 42 N. H. 292, it would seem, however, that they might take an assignment of the judg-

ment for costs, and enforce that judgment as effectually as this plaintiff could. *Smith* v. *Ingraham,* 22 Vt. 414, is in point.

It is urged, also, that a return by the sheriff of Coös county of no property is not proof that there was no property in another county.

This may be true ; and still we think that such a return made by an officer in the county where the suit was originally brought, and where the plaintiff in that suit resided, was sufficient, at least *prima facie.* In *Brown* v. *Wallace,* 7 Mass. 208, it was held that a return of *non est inventus* by the officer who made the arrest on mesne process was sufficient to charge the bail, though the principal lived in another county, it being the practice to give the execution to the officer who made the arrest.

In regard to the authority to place the name of Mr. Benton upon the writ as indorser there is no evidence, and it is not insisted on in the defendants' brief.

As there is no provision for any judgment,

*Case discharged.*